**Barry LOOK**

v.

**MAINE UNEMPLOYMENT INSUR-
ANCE COMMISSION.**

Supreme Judicial Court of Maine.

Argued Nov. 7, 1985.

Decided Dec. 16, 1985.

Frederick B. Stocking, (orally), Machias, for plaintiff.

Leanne Robbin, (orally), Mary Lou Dyer, Asst. Attys. Gen., Augusta, S. Mason Pratt, Jr., Portland, for defendant.

Before NICHOLS, ROBERTS, VIOL-ETTE, WATHEN and SCOLNIK, JJ., and WERNICK, A.R.J.

SCOLNIK, Justice.

The plaintiff, Barry Look, appeals from a judgment of the Superior Court (Washington County) affirming a decision of the defendant, Maine Unemployment Insurance Commission (Commission). The Commission decided that the plaintiff was disqualified from receiving benefits because he was discharged from his employment for misconduct connected with his work within the meaning of 26 M.R.S.A. §§ 1043(23), 1193(2) (1974 & Supp.1985). On appeal, the plaintiff raises several challenges to the Commission's conclusion that the plaintiff's loss of his license to operate a motor vehicle, resulting from an arrest that occurred during his off duty hours for the operation of a vehicle while under the influence of intoxicating liquor, constituted misconduct connected with his work. We affirm the judgment.

The plaintiff was employed as a temporary employee for the New England Telephone Company (NET) in Machias on March 21, 1983. His job of installing and maintaining residential telephone service required that he drive an NET vehicle from one job site to another within the Steuben to Calais region. In September 1983, the plaintiff was arrested for the operation of a motor vehicle while under the influence of intoxicating liquor. *See* 29 M.R.S.A. § 1312–B (Supp.1982–1983), *amended* by 29 M.R.S.A. § 1312–B(2) (Supp.1985–1986).

He was not engaged in employment activities at the time of his arrest. After trial and conviction in January 1984, the plaintiff's license was suspended for forty-five days commencing on February 17, 1984. His employment with NET ended on March 5, 1984, because of his inability to perform his job without a driver's license.[1]

It was NET's unwritten policy that a temporary employee whose license was suspended as a result of an OUI conviction would be automatically discharged from employment. Although there is no indication that the plaintiff was actually informed of the policy, officials at NET believed that employees, such as the plaintiff, understood that holding a driver's license was essential to continued employment because their work required that they be able to drive a motor vehicle.

The plaintiff filed for unemployment benefits in March, 1984. On March 18, 1984, a deputy of the Commission decided that the plaintiff qualified for benefits, finding that the misconduct for which he was discharged was not connected with his work. The appeal tribunal of the Commission reversed. It found that the plaintiff's violation of the OUI law created "the situation which caused termination of his services." After a hearing, the Commission affirmed the decision of the Appeal Tribunal. The Commission found that NET's policy was reasonable, and the plaintiff's conduct was unreasonable. Pursuant to 26 M.R.S.A. § 1194(8) (Supp.1985); 5 M.R.S.A. §§ 11001–11008 (1979 & Supp.1985–1986), the plaintiff appealed to the Superior Court. The Superior Court affirmed the Commission's decision.

Because the Superior Court ruled solely on the basis of the Commission's record, we review the record directly to determine whether " 'the Commission abused its discretion, committed an error of law, or made findings not supported by substantial evidence in the record.' " *Thompson v. Maine Unemployment Ins. Comm'n*, 490

A.2d 219, 222 (Me.1985) (quoting *Keith v. Saco River Corridor Comm'n*, 464 A.2d 150, 153 (Me.1983) (citations omitted)). We are mindful of the fact that the remedial nature of the Employment Security Law requires that it be liberally construed in favor of the employee. *Brousseau v. Maine Unemployment Sec. Comm'n*, 470 A.2d 327, 329 (Me.1984); *see* 26 M.R.S.A. § 1042 (1974).

We begin by considering the relevant statutory provisions. Title 26 M.R.S.A. § 1193(2) provides that an individual will be temporarily disqualified from receiving unemployment benefits if the Commission finds that "he has been disqualified for misconduct connected with his work." Misconduct is defined by 26 M.R.S.A. § 1043(23):

> "Misconduct" means conduct evincing such willful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has a right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer.

In *Moore v. Maine Dep't of Manpower Affairs*, 388 A.2d 516, 519 (Me.1978), we said that a denial of benefits based on misconduct is not determined solely on the basis of a reasonable company rule, but rather by the provisions of section 1043(23), which "sets a rule of reason, to be objectively applied based on the totality of the circumstances." *Id.* Similarly, we have stated that the Commission must also determine whether "the employee's conduct is 'upon an objective standard, unreasonable under all the circumstances of the case.' " *Thompson v. Maine Unemployment Ins. Comm'n*, 490 A.2d at 222 (quot-

---

**1.** The plaintiff's last day of actual work was February 17, 1984. Because of accrued vaca-

tion and holiday pay, the plaintiff's formal termination day with NET was March 5, 1984.

ing *Moore v. Maine Dep't of Manpower Affairs*, 388 A.2d at 519).

■ The Commission found NET's policy that a loss of license subjected temporary workers to automatic termination "patently reasonable." The plaintiff challenges this finding on several grounds.

First, he argues that competent evidence is lacking to support a finding that a rule exists. An examination of the record before us, however, reveals substantial evidence to support the Commission's finding that NET had an unwritten policy. Next, the plaintiff asserts that an unwritten rule cannot be the basis for a finding that he was discharged for conduct connected with his work. There is no requirement that a rule be in writing because the denial of benefits based on misconduct is determined by the application of the provisions contained in section 1043(23). *See Moore v. Maine Dep't of Manpower Affairs*, 388 A.2d at 519; *cf. Thompson v. Maine Unemployment Ins. Comm'n*, 490 A.2d at 223. The lack of a written policy is only a factor to be considered in determining whether NET had reasonable standards of behavior or interests violated by the plaintiff's conduct.

Contrary to the plaintiff's assertions, NET's policy is work-related. The plaintiff's job required that he operate a motor vehicle. Without an operator's license, he could not perform his work. Thus, the loss of a license, whether it resulted from conduct on or off the job, is work related. Because NET does not consider lesser measures than automatic discharge, the plaintiff argues that NET's policy is too harsh. Temporary workers, however, are put on notice that they can be discharged at any time for any reason. As the Commission stated: "Although the rule is strict, the rule adequately reflects the employer's desire that temporary workers, hired on a trial basis, be responsible and able to perform their jobs without handicap during the trial period."[2] The plaintiff also argues that because NET's standard is harsher on temporary employees than on full time regular employees, it allows the Commission to judge his conduct against a different standard than that of other employees. Full time regular employees may have been entitled to a leave of absence in similar circumstances and would not have been subject to automatic discharge.[3] While NET's policy operates automatically with respect to a temporary employee, the Commission correctly applied the objective standard in finding that NET had a reasonable policy. We find no error in the Commission's conclusion.

■ Next, we examine the reasonableness of the employee's conduct as it related to the employer's standards. The Commission concluded that the plaintiff's conduct was unreasonable because his "license was so essential to his job that his negligent choice to drink and drive constituted carelessness of such, as to manifest a substantial disregard of the employer's interest."

The plaintiff does not challenge the finding that his choice to drink and drive was unreasonable. He argues instead that because his conduct did not occur on the job, he did not disregard any obligation owed to NET. This argument is misdirected. The issue, correctly framed, is whether the plaintiff's conduct, either on or off the job, amounted to an intentional disregard of the employer's interests. In *Thompson v. Maine Unemployment Ins. Comm'n*, 490 A.2d at 222, we stated

"The Commission examines the employee's behavior as the *objective* manifestation of intent. It is not an essential of misconduct, as defined by the statute, that the employee have actual subjective intent to disregard the employer's inter-

---

2. After two years of work, temporary employees can bid for a regular full time job.

3. Apparently, all a leave of absence gives to a full time regular employee is seniority rights so that when a job becomes available NET will rehire that employee ahead of someone with less seniority. While on leave, an individual is not considered by NET to be in its employment.

est. It is sufficient ... that the employee's conduct was of a type, degree, or frequency that was so violative of employer interests" that the conduct amounts to an intentional disregard of those interests.

*Id.* (quoting *Sheink v. Maine Dep't of Manpower Affairs,* 423 A.2d 519,522 (Me. 1980)(emphasis in original)).

On the record before us, the Commission could rationally conclude that the plaintiff's conduct objectively constituted an intentional disregard of the employer's reasonable standards. The plaintiff knew that his ability to operate a motor vehicle was essential to the performance of his work. NET could reasonably expect that the plaintiff would not lose his license as a result of an OUI conviction. The Legislature has made it quite clear that individuals who choose to operate a motor vehicle after drinking intoxicating liquor face serious penalties, including the risk of license suspension. *See* 29 M.R.S.A. § 1312–B (Supp. 1985–1986). Considering the totality of the circumstances, the plaintiff's decision to risk the loss of his license to operate a motor vehicle, an essential requirement of his job, is conduct that objectively constitutes an intentional and substantial disregard of the employer's reasonable interests. *See Grimble v. Brown,* 247 La. 376, 171 So.2d 653, *cert. denied,* 382 U.S. 861, 86 S.Ct. 123, 15 L.Ed.2d 99 (1965).

The entry is:

Judgment affirmed.

All concurring.