996 P.2d 280

**Larry K. KEANINI, Sr.,
Appellant–Appellee,**

v.

**Lorraine H. AKIBA, Director of the Department of Labor and Industrial Relations, State of Hawaiʻi, Appellee–Appellant,**

and

**Trans Hawaiian, Inc., Appellee–Appellee.**

No. 22116

Intermediate Court of Appeals of Hawaiʻi.

March 17, 2000.

76

Frances E.H. Lum, Deputy Attorney General, for appellee-appellant.

Gary J. Maxwell for appellant-appellee.

BURNS, C.J., WATANABE and LIM, JJ.

Opinion of the Court by LIM, J.

In the second appeal before us in this unemployment insurance benefits case, Appellant Director (Director) of the Department of Labor and Industrial Relations (DLIR) appeals from the second circuit court's October 6, 1998 order and its November 12, 1998 final judgment thereon reversing the DLIR's employment security appeals officer's (appeals officer) denial of unemploy-

ment insurance benefits to Appellee Larry K. Keanini, Sr. (Claimant).

We hold in this opinion that Claimant's conscious decision to drive without no-fault insurance, when he knew or should have known that his job—which required him to maintain a valid driver's license—would be in jeopardy if he chose to drive uninsured, was a wilful or wanton disregard of his employer's interests and thus constituted misconduct connected with work disqualifying him from unemployment insurance benefits. We therefore reverse and remand for entry of judgment in favor of the Director and Claimant's employer.

*BACKGROUND*

Our opinion in the first appeal in this case, *Keanini v. Akiba*, 84 Hawai'i 407, 935 P.2d 122 (App.1997), described the general background of the case and the genesis of that first appeal:

Claimant was employed as a bus driver for Trans Hawaiian, Inc. (Employer) from July 11, 1986 to July 22, 1993. In May 1993, while off duty, Claimant was stopped and cited for, among other charges, driving his car without no-fault insurance coverage. Claimant was subsequently convicted and his driver's license was suspended for three months, effective July 23, 1993.

On July 23, 1993, Claimant informed Employer that his license had been suspended. Since his driver's license was necessary for his job as a bus driver, Claimant volunteered to perform any other duties that Employer might have available. Employer did not, however, assign Claimant any duties after July 22, 1993. One month after being informed that Claimant's license was suspended, Employer sent a letter to Claimant stating that he was terminated from employment "effective immediately."

Claimant subsequently filed for unemployment benefits. The DLIR denied his application on the basis that Claimant voluntarily left employment without good

cause.[1] Claimant filed a request for Reconsideration and Appeal. After a hearing, the appeals officer of the DLIR (Appeals Officer) issued a decision affirming the denial of benefits. Claimant next appealed to the Second Circuit Court, which also affirmed the denial of benefits.

*Id.* at 410, 935 P.2d at 125 (footnote added).

On Claimant's appeal from the circuit court's February 10, 1995 judgment against him, we held:

[T]hat the appeals officer of the Department of Labor and Industrial Relations (DLIR) erred by applying the wrong test for determining when an employee has voluntarily left work. We further conclude that Claimant did not voluntarily leave his work, but rather, was discharged. Therefore, we vacate the February 10, 1995 judgment of the circuit court denying Claimant unemployment benefits. We remand the case to the circuit court, with instructions that it likewise remand the case to the appeals officer of the Department of Labor and Industrial Relations for a determination of whether Claimant was discharged for misconduct connected with work[2] and thus disqualified for unemployment benefits pursuant to [Hawai'i Revised Statutes (HRS)] § 383–30(2)(1993).

*Id.* at 409–410, 935 P.2d at 124–125 (footnote added).

On remand, the appeals officer determined that Claimant had been discharged for "misconduct connected with work," and once again denied him unemployment insurance benefits. The appeals officer made the following pertinent Findings of Fact (FsOF), which the parties to this appeal do not dispute:

2. The [C]laimant worked for a tour company from July 11, 1986, to August 24, 1993. His last day of work was on July 22, 1993.

3. The [E]mployer hired the [C]laimant as a tour driver. At times during his employment, he held various other jobs, but his last job was as a tour driver. The [C]laimant reported on his separation statement dated August 24, 1993, that he worked for the [E]mployer as a "bus driver."

4. The [E]mployer discharged the [C]laimant by letter dated August 24, 1993, because he was "no longer qualified to perform the position which [he][was] hired for," due to the suspension of his driver's license.

5. In May 1993, while off duty, the [C]laimant received traffic citations for, among other violations, driving his private automobile without auto insurance.

6. On July 23, 1993, a court of law found the [C]laimant guilty of the traffic violation and suspended his State of Hawai'i drivers' license.

7. The suspension was for three months with the condition that the [C]laimant [obtain] automobile insurance (SR–22) coverage. If he failed to obtain this insurance coverage, the suspension would be for three years.

8. The [C]laimant notified the [E]mployer of the court's decision on July 23, 1993, and was removed from his duties.

---

1. Hawai'i Revised Statutes (HRS) § 383–30(1) (1993) provides, in pertinent part:

An individual shall be disqualified for [unemployment insurance] benefits:
(1) Voluntary separation.... For any week beginning on or after October 1, 1989, in which the individual has left the individual's work voluntarily without good cause, and continuing until the individual has, subsequent to the week in which the voluntary separation occurred, been paid wages in covered employment *equal to not less* than five times the individual's weekly benefit amount as determined under [HRS] section 383–22(b).

2. HRS § 383–30(2) (1993) provides, in pertinent part:

An individual shall be disqualified for [unemployment insurance] benefits:
....
(2) Discharge or suspension for misconduct.... For any week beginning on or after October 1, 1989, in which the individual has been discharged for misconduct connected with work, and until the individual has, subsequent to the week in which the discharge occurred, been paid wages in covered employment *equal to not less than* five times the individual's weekly benefit amount as determined under [HRS] section 383–22(b).

9. The [C]laimant's auto insurance had lapsed sometime in 1992. He did not renew this insurance coverage because of the costs and because, as explained at the October 13, 1993, hearing, he "chose" not to renew this insurance because he was not an American citizen, but a Hawaiian national. The [C]laimant concedes that he is an American citizen.

10. The [C]laimant knew that he could either lose his license or be required to pay a fine if he [was] convicted for driving his automobile without insurance coverage.

11. The [E]mployer required the [C]laimant to have a valid State of Hawai'i drivers' license and a clean traffic abstract to work as a driver and to maintain his CDL license. The claimant understood these job requirements.

. . . .

13. As of October 13, 1993, the [C]laimant had not obtained automobile insurance because he could not afford to purchase such coverage.

14. The [E]mployer could not allow an unlicensed driver to operate its vehicles because of the potential adverse liabilities to the company.

15. The [E]mployer attempted to find other work for the [C]laimant after notice of his license suspension to maintain his employment in view of his length of employment with the [Employer]. However, as the [Employer] was undergoing downsizing, there was no other work to which he could have been assigned. Had the [C]laimant retained his driver's license he would have continued to work since he was not targeted for lay off and driver work was still available to him.

The appeals officer also made the following conclusions of law (CsOL), in pertinent part:

Although the act that lead to the loss of his license occurred while off duty, the [C]laimant had a material duty to the [E]mployer to have a regard for the [E]mployer's interests both while on and off duty

. . . .

The [C]laimant's off-duty conduct that lead to the suspension of his driver's license and subsequent discharge, therefore, was work connected as it adversely affected his ability to drive the [E]mployer's buses to an "appreciable degree."

The [E]mployer had a reasonable expectation that the [C]laimant, as a bus driver, would maintain his valid driver's license while operating its vehicles and take reasonable steps to ensure his retention of this license to continue his employment with the [Employer].

. . . .

The [E]mployer required, and the [C]laimant understood, that he needed a valid State of Hawai'i drivers' license and a clean traffic abstract to work as a tour driver for the [E]mployer. Despite this knowledge, the [C]laimant voluntarily chose to operate his vehicle without automobile insurance coverage knowing that he could lose his driver's license if caught. The [C]laimant's loss of his license was material to his employment as it was a legitimate and reasonable job requirement. Since there was no other work to assign the [C]laimant despite an effort to place him in a job that did not require this license, the situation allowed the [E]mployer no choice but to remove him from duty.

Had [Employer] allowed the [C]laimant to operate its vehicle knowing that he did not have the requisite license, the [E]mployer would have exposed itself to potential harm and adverse liabilities.

Based upon the foregoing, therefore, the [C]laimant knowingly disregarded reasonable job requirements that, if violated, would adversely offend the [E]mployer's interests and ultimately affect his ability to perform the driving duties he knew he owed the [E]mployer and for which he was hired. Such conduct showed a wilful disregard of the [E]mployer's interests and constituted a substantial breach of the duties he owed his [E]mployer. The [E]mployer discharged the [C]laimant for misconduct connected with work.

On appeal, the circuit court reversed the appeals officer's decision, and held, in pertinent part:

> The issue before the Appeals Officer, as well as before the Court, is whether the evidence would support a finding of misconduct within the meaning of [Hawai'i] Administrative Rule[s] Section 12–5–51.
>
> . . . .
>
> The Appeals Officer was in error in finding that [Claimant] had committed misconduct. [Claimant] had engaged in an isolated incident, which had occurred off-duty, while driving his personal automobile. As such, his conduct does not rise to the level of wilful or wanton behavior required to sustain the Appeals Officer's finding of misconduct.
>
> While benefits should not be given to those who do not deserve them, unemployment insurance laws must be liberally construed to give life to the beneficent purposes for which they were enacted. This Court concludes that the Appeals Officer's findings do not support a conclusion that Appellant was discharged from his employment for misconduct connected with work within the meaning of [Hawai'i] Administrative Rule[s] § 12–5–51.

The Director then filed a timely notice of this second appeal.

## STANDARDS OF REVIEW

■■■ Appeal of a decision made by the circuit court upon its review of an agency's decision is a secondary appeal. The standard of review is one in which this court must determine whether the circuit court was right or wrong in its decision, applying the standards set forth in Hawai'i Revised Statutes (HRS) § 91–14(g) (1993) to the agency's decision. *University of Hawai'i Professional Assembly v. Tomasu*, 79 Hawai'i 154, 157, 900 P.2d 161, 164 (1995). Hence, the agency's findings of fact are reviewed under the clearly erroneous standard. *Wailuku Sugar Co. v. Agsalud*, 65 Haw. 146, 148, 648 P.2d 1107, 1110 (1982); HRS § 91–14(g)(5) (1993). "A finding of fact is clearly erroneous when (1) the record lacks substantial evidence to support

the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made." *State v. Okumura*, 78 Hawai'i 383, 392, 894 P.2d 80, 89 (1995) (citation and internal quotation marks omitted). On the other hand, an agency's legal conclusions are freely reviewable. *Tate v. GTE Hawaiian Tel. Co.*, 77 Hawai'i 100, 102–03, 881 P.2d 1246, 1248–49 (1994). Hence, an agency's statutory interpretation is reviewed *de novo*.

*Keanini*, 84 Hawai'i at 410, 935 P.2d at 125 (footnote omitted).

> However, in deference to the administrative agency's expertise and experience in its particular field, the courts should not substitute their own judgment for that of the administrative agency where mixed questions of fact and law are presented. . . . This is particularly true where the law to be applied is not a statute but an administrative rule promulgated by the same agency interpreting it. . . . To be granted deference, however, the agency's decision must be consistent with the legislative purpose.

*Camara v. Agsalud*, 67 Haw. 212, 216, 685 P.2d 794, 797 (1984)(internal citations and citations omitted).

> Our review is further qualified by the principle that the [agency's] decision carries a presumption of validity and [the party seeking to reverse the agency's decision] has the heavy burden of making a convincing showing that the decision is invalid because it is unjust and unreasonable in its consequences.

*Chock v. Bitterman*, 5 Haw.App. 59, 64, 678 P.2d 576, 580 (1984) (citations omitted).

## DISCUSSION

The Director advances two issues on appeal:

> The circuit court erred in reversing the Appeals Office decision by concluding that [Claimant] was not discharged for misconduct connected with work, thereby granting him unemployment insurance benefits.

1. The Circuit Court's order stated the issue as follows:

The issue before the Appeals Officer, as well as before the Court, is whether the evidence would support a finding of misconduct within the meaning of [Hawaiʻi] Administrative Rule[s] Section 12–5–51.

The Circuit Court appeared to have been acting as the fact finder rather than an appellate court and did not apply the correct standard of review. The Circuit Court should have inquired whether the Appeals Office's decision was clearly erroneous, applying the standard of review set out by [HRS] section 91–14(g)(5).

2. The Circuit Court overturned the Appeals Office's determination that [Claimant] engaged in misconduct connected with work and substituted its own judgment, stating:

[Claimant] had engaged in an isolated incident, which had occurred off-duty, while driving his personal automobile. As such, his conduct does not rise to the level of wilful or wanton behavior required to sustain the Appeals Officer's finding of misconduct.

This determination is in error as it is not supported by the facts and the Circuit Court incorrectly applied the rule defining misconduct to the facts of this case.

The circuit court held that "[Claimant's] conduct [did] not rise to the level of willful or wanton behavior required to sustain the Appeals Officer's finding of misconduct" which would, under Hawaiʻi Revised Statutes (HRS) § 383–30(2), disqualify him from receiving unemployment insurance benefits.

HRS § 383–30(2)(1993) provides, in relevant part, that an individual shall be disqualified from receiving unemployment insurance benefits

[f]or any week beginning on and after October 1, 1989, in which the individual has been discharged for misconduct connected with work, and until the individual has, subsequent to the week in which the discharge occurred, been paid wages in covered employment equal to not less than five times the individual's weekly benefit amount as determined under [HRS] section 383–22(b).

Hawaiʻi Administrative Rules (HAR) § 12–5–51, adopted to implement HRS § 383–30(2), *Camara*, 67 Haw. at 217, 685 P.2d at 798, defines "misconduct connected with work" as follows:

(c) Misconduct connected with work consists of actions which show a wilful or wanton disregard of the employer's interests, such as deliberate violations of or deliberate disregard of the standards of behavior which the employer has a right to expect of an employee, or carelessness, or negligence of such a degree or recurrence as to show wrongful intent or evil design. Mere inefficiency, unsatisfactory conduct, poor performance because of inability or incapacity, isolated instances of ordinary negligence or inadvertence, or good-faith errors in judgment or discretion are not misconduct. The misconduct shall be related to the work of the individual or the individual's status as an employee.

HAR §§ 12–5–51(d) and (e) provide:

(d) In determining whether an individual's act constituted "misconduct" the [DLIR] shall consider any relevant evidence presented which relates to:

(1) Employee's reasons for the act or omission, and efforts to avoid the act or failure to act;

(2) The relevant circumstances of the case and any causative effect therefrom upon the employee's actions;

(3) The nature and importance to the employer of the offended interest of the employer;

(4) Any lawful and reasonable company policy or custom;

(5) Employer's actions to curtail or prevent, if possible, the objectionable conduct; and

(6) The nature of the act or failure to act.

(e) Situations where misconduct may be found include, but are not limited to, the following where the evidence demonstrates:

(1) Unexcused absence or recurring unexcused tardiness; or

(2) Altercation at work; or

(3) Material false representations by the employee to the employer; or

(4) Employee's gross neglect of duty; or

(5) Employee's wilful disobedience of employer's directives or employee's insubordination; or

(6) Intentional conversion of employer's property by the employee; or

(7) Employee's unauthorized use of intoxicants on the job; or

(8) Employee's wilful and substantial abuse of the employer's equipment or property.

■ The issue is whether Claimant's failure to maintain no-fault insurance rose to the level of "misconduct connected with work" which would disqualify him from unemployment insurance benefits under HRS § 383–30(2).

The circuit court reasoned as follows in reversing the decision of the appeals officer:

> The Appeals Officer was in error in finding that [Claimant] had committed misconduct. [Claimant] had engaged in an isolated incident, which had occurred off-duty, while driving his personal automobile. As such, his conduct does not rise to the level of wilful or wanton behavior required to sustain the Appeals Officer's finding of misconduct.

Clearly; the circuit court's conclusion that Claimant's conduct did not rise to the level of wilful or wanton behavior required for a finding of "misconduct connected with work" was based upon three factors: (1) That Claimant had engaged in an isolated incident, (2) that the incident occurred off-duty, and (3) that the incident occurred while Claimant was driving his personal automobile.

We simply disagree with the accuracy of the circuit court's first factor. True, the traffic citation which resulted in suspension of Claimant's driver's license was an "isolated incident." But the appeals officer's undisputed FsOF 5 and 9 indicate that at the time Claimant was caught driving without no-fault insurance he had been driving uninsured for at least four months.

The conduct relevant here is not the culminating traffic stop and citation by the police officer. HRS § 383–30(2) and HAR § 12–5–51 focus upon Claimant's conduct. The pertinent question is "whether an individual's act constituted 'misconduct[.]' " HAR § 12–5–51(d). And it cannot be said that Claimant's four-month course of conduct was an "isolated incident."

We do not believe the other two factors underlying the circuit court's conclusion provide legitimate support for it.

That the incident occurred "off-duty" has little relevance to our inquiry. While the phrase "misconduct connected with work" naturally conjures incidents actually or constructively on duty, such as pilferage or tardiness, its scope, like its language ("connected with"), is not so confined. HAR § 12–5–51(c) makes the point explicit: "The misconduct shall be *related to* the work of the individual or the individual's status as an employee." (Emphasis added).

Similarly, the fact that Claimant was driving his personal automobile when the incident occurred has little resonance in our hearing. The *reductio ad absurdum* in this respect would be a finding of no misconduct where a claimant avenges a work reprimand by ramming his personal vehicle through the front door of his workplace.

The plain implication is that the circuit court based its conclusion upon faulty or irrelevant considerations.

The ultimate question still remains, however, whether Claimant's conduct constituted disqualifying "misconduct connected with work."

In *Hardin v. Akiba*, 84 Hawai'i 305, 933 P.2d 1339 (1997), the Hawai'i Supreme Court encountered the same question. In that case, the claimant Hardin was fired for leaving work two-and-one-half hours early without permission.

Hardin had worked for United Airlines as a reservationist for twenty-six years at the time of her termination from employment on June 28, 1994. Beginning in 1990, Hardin suffered from numerous medical problems and as a result compiled a salient record of absenteeism and tardiness. During that pe-

riod, her record resulted in consistent ratings of "unacceptable" for dependability in her performance reviews.

In response, United counseled her numerous times, in both formal and informal sessions. A progression of notices to Hardin from United, from a notice of concern to a warning notice and ultimately a final notice, indicated a lack of improvement over the years.

Hardin left work early without permission on June 11, 1994 to care for a sick friend. A little more than two weeks later, she was fired. *Id.* at 306–08, 933 P.2d at 1340–42.

For various reasons, the supreme court could not consider Hardin's remarkable record of prior absenteeism and tardiness as part of the conduct underlying the "misconduct connected with work" alleged by her employer in that case. As a result, the question before the supreme court in *Hardin* was whether a single instance of leaving work early without permission constituted disqualifying "misconduct connected with work." *Id.* at 315–18, 933 P.2d at 1349–51. Hardin's prior record of absenteeism and tardiness was significant in the case only insofar as United's response to her record afforded her notice "that her job would be in jeopardy if she chose to leave work early without permission[.]" *Id.* at 318, 933 P.2d at 1352.

The supreme court applied the definition of "misconduct connected with work" contained in HAR § 12–5–51(c) in determining whether the single instance of absenteeism in question constituted misconduct sufficient to deny her unemployment insurance benefits: "Thus, where an employer urges absenteeism as misconduct, the controlling question is whether the employee's actions 'show a wilful or wanton disregard of the employer's interests.'" *Id.* at 316, 933 P.2d at 1350 (quoting HAR § 12–5–51(c)).

Utilizing this standard of decision, the supreme court held:

> We agree with the [Unemployment Insurance Division] that Hardin, after numerous counseling sessions and notices

from United regarding her poor dependability, knew or should have known that her job would be in jeopardy if she chose to leave work early without permission on June 11, 1994. Accordingly, we hold that Hardin's conscious decision to leave work early on June 11 in the face of this risk constituted an unexcused absence which demonstrated a "wilful or wanton disregard of the employer's interests[,]" HAR § 12–5–51(c), thereby disqualifying Hardin for unemployment insurance benefits. Consequently, we also hold that the circuit court's finding that Hardin was not discharged for misconduct connected with work was clearly erroneous.

*Id.* at 318, 933 P.2d at 1352.

Applying the same standard of decision in this case, we conclude that Claimant also "knew or should have known" that his job would be in jeopardy if he chose to drive uninsured, and that he made a "conscious decision . . . in the face of this risk" to do precisely that, *id.*, which demonstrated a "wilful or wanton disregard of the employer's interests," HAR § 12–5–51(c), which is "misconduct connected with work" disqualifying him from unemployment insurance benefits. HRS § 383–30(2).

The record amply supports the appeals officer's findings (FsOF 11 and 14) and conclusions that Claimant's employer necessarily, and therefore reasonably, expected Claimant to maintain a valid driver's license and a clean traffic abstract in order to hold a commercial driver's license (CDL), a requirement of his job as a tour bus driver, and that Claimant understood these job requirements.

The record is similarly clear in support of the appeals officer's findings (FsOF 10 and 11) and conclusion that Claimant understood he must remain insured in order to maintain a valid CDL.[3]

Claimant nonetheless drove uninsured when the no-fault insurance policy on his personal car lapsed in 1992. The appeals officer's findings (FsOF 5 and 9) indicate he drove uninsured for at least four months.

---

3. Pursuant to HRS § 431:10C–104(b) (1993), "[e]very owner of a motor vehicle used or operated at any time upon any public street, road, or

highway of this State shall obtain a no-fault policy upon such vehicle[.]"

The record reflects that he drove uninsured for about one year.

Indeed, we observe in the record that Claimant chose to drive his uninsured auto with nonconforming "Kingdom of Hawai'i" license plates, with full knowledge that this would invite a traffic stop and potential citation by a police officer.

According to his testimony, Claimant believed that such a traffic stop would result in either a citation or, merely, a warning from the police officer.

Pursuant to HRS § 286–116(a)(1993), however, "[e]very police officer or law enforcement officer when stopping a vehicle or inspecting a vehicle for any reason shall demand that the driver or owner display the driver's or owner's driver's license and *insurance identification card.*" (Emphasis added).

If stopped, Claimant knew or reasonably should have known of the risk that his driver's license would be suspended.[4]

Thus Claimant "knew or should have known that [his] job would be in jeopardy if [he] chose" to drive uninsured, *Hardin,* 84 Hawai'i at 318, 933 P.2d at 1352, as he "knew that he could either lose his license or be required to pay a fine if he [was] convicted for driving his automobile without insurance coverage." FOF 10. Claimant nevertheless made the "conscious decision ... in the face of this risk" to do so. *Hardin,* 84 Hawai'i at 318, 933 P.2d at 1352.

Under *Hardin,* then, Claimant engaged in "misconduct connected with work" disqualifying him from unemployment insurance benefits under HRS § 383–30(2).

Our conclusion finds further support in the administrative rules governing the DLIR's unemployment insurance benefits determinations.

Under HAR § 12–5–51(c), for example, "actions which show a willful or wanton disregard of the employer's interests" include "deliberate disregard of the standards of behavior which the employer has a right to expect of an employee[.]" We believe Claimant's conduct fits at least the spirit of this disqualifying description.

Similarly, HAR § 12–5–51(e) provides exemplars for "misconduct," which include an "[e]mployee's wilful disobedience of employer's directives[.]" HAR § 12–5–51(e)(5). Though the record does not contain any indication that Claimant's employer expressly directed its tour bus drivers to maintain their CDLs, for the bus drivers it is or should be a requirement that "goes without saying."

The administrative rules also provide that the DLIR, "[i]n determining whether an individual's act constituted 'misconduct' ... shall consider any relevant evidence presented which relates to" certain enumerated factors. HAR § 12–5–51(d).

One of the factors is "[t]he nature and importance to the employer of the offended interest of the employer[.]" HAR 12–5–51(d)(3).

Consideration of this factor in this case certainly militates toward a finding of misconduct. Maintenance of Claimant's CDL implicated not only safety and liability concerns of his employer, but legal and regulatory concerns as well.

The same considerations indicate that the next factor, "[a]ny lawful and reasonable company policy or custom[,]" HAR § 12–5–51(d)(4), also counseled a finding of misconduct.

HAR § 12–5–51(d)(5) requires that the DLIR also consider the "[e]mployer's actions to curtail or prevent, if possible, the objectionable conduct[.]" Because Claimant never discussed his insurance situation with his employer until his license was suspended, it was not possible for the employer to "curtail or

---

4. Pursuant to HRS § 431:10C–117(a)(3) (1993), penalties for driving without no-fault insurance included, in relevant part:

    In addition to the fine in [paragraph (2)], if any person operates a motor vehicle without a valid no-fault policy in effect insuring the driver or registered owner, or both, either the driver's license of the driver and of the registered owner shall be suspended for three months or they shall be required to maintain proof of financial responsibility pursuant to [HRS] section 287–21(2), (3), or (4) and keep a nonrefundable no-fault insurance policy in force for six months[.]

prevent" the misconduct; thus Claimant can find no mitigation in this factor.

With respect to HAR § 12–5–51(d)(6), "[t]he nature of the act or failure to act[,]" suffice it to say that Claimant's act of driving without no-fault insurance was an illegal act.

The remaining factors to be considered under HAR § 12–5–51(d) are:

(1) Employee's reasons for the act or omission, and efforts to avoid the act or failure to act;

(2) The relevant circumstances of the case and any causative effect therefrom upon the employee's actions[.]

These two factors relate to Claimant's primary arguments on appeal.

Claimant's overarching argument is that his actions were a result of penury, not misconduct. As Claimant would have it: "Simply, [Claimant] lost his job because he lost his driver's license. He lost his license because he did not have car insurance. He did not have car insurance because he could not afford it." A subsidiary argument advanced by Claimant is that, inasmuch as his conduct was driven by his inability to afford the required insurance, it cannot be described as "wilful or wanton" under HAR § 12–5–51(c).

Claimant testified that his expenses for rent, food, clothing and other necessities for his family were such that he simply could not afford no-fault insurance on his salary as a tour bus driver. And the appeals officer so found. FsOF 9 and 13.

While we certainly appreciate the plight of those in this State who cannot afford no-fault insurance, we do not hesitate to point out that in this case the misconduct in question is not in being uninsured, but in driving unlawfully while uninsured. While modest means certainly implicate the former, we cannot hold that they excuse the latter.

Moreover, exiguous circumstances did not in any way preclude Claimant from discussing his insurance problems with his employer and otherwise seeking a lawful solution to his transportation problems. Unfortunately, as we have observed *supra*, the first time Claimant broached the subject with his employer was when he told his employer his

license had been suspended for driving without no-fault insurance.

The case of *Noor v. Agsalud,* 2 Haw.App. 560, 634 P.2d 1058 (1981), is instructive in this respect. Though *Noor* involved disqualification for leaving employment "voluntarily without good cause" under HRS § 383–30(1), rather than for "misconduct connected with work" under HRS § 383–30(2), the Hawai'i Supreme Court promulgated a principle we believe transcends the context of that case:

We hold that an employee ... had the duty to try reasonable alternatives for the solution of his or her problem within the employer's organization prior to terminating employment. Reasonable alternatives would include at least consulting the employer and attempting to find some means of solution to the problems.

*Id.* at 563, 634 P.2d at 1060.

Finally, with respect to Claimant's arguments, it is worthy of remark that at the hearing leading up to the first appeal in this case, Claimant testified that he allowed his coverage to lapse not because he could not afford the insurance, but because he was a Hawaiian national and not an American citizen, and as such immune to the insurance requirements. FOF 9.

We therefore cannot find, in Claimant's "reasons for the act or omission, and efforts to avoid the act or failure to act[,]" HAR § 12–5–51(d)(1), or in "[t]he relevant circumstances of the case and any causative effect therefrom upon the [Claimant's] actions[,]" HAR § 12–5–51(d)(2), any mitigation of Claimant's misconduct.

We have found other jurisdictions in accord with our conclusions in this case.

For example, in *Richardson v. Mississippi Employment Sec. Comm'n,* 593 So.2d 31 (Miss.1992), the claimant held a position in which maintenance of a valid driver's license was a condition of employment. Unbeknownst to the claimant, his driver's license had been administratively suspended due to his failure to maintain automobile liability insurance. The validity of his driver's license was contingent because of his involvement in a previous traffic accident. Upon discovery

of the suspension, his employer fired him. *Id.* at 32–33.

Even though the claimant's driver's license was not suspended as a result of a citation for driving without liability insurance, as is the situation in our case, the Mississippi Supreme Court found him ineligible for unemployment benefits, holding that his failure to maintain a valid Mississippi driver's license constituted "misconduct connected with work under Mississippi law." *Id.* at 32, 33–35 ("[t]his Court has defined misconduct connected with work as: [c]onduct evincing willful and wanton disregard of the employers interest").

Justice Banks, concurring in *Richardson*, expressed his reluctance to conclude there was willful misconduct in the hypothetical case of an employee who, after being involved without fault in an accident, would be unable to obtain the then-required insurance for economic reasons. Justice Banks concurred, however, because the claimant "could not say with certainty that he ever had a license during his tenure with [his employer] ... [but] drove, however, in disregard of whether he had a driver's license and never informed his employer that his license was in question." *Id.* at 35.

In *Look v. Maine Unemployment Ins. Comm'n*, 502 A.2d 1033 (Me.1985), a temporary worker whose job required him to drive a company vehicle from site to site was fired when his driver's license was suspended due to an off-duty drunk driving conviction.

The employer had an unwritten policy that a temporary employee whose license is suspended as a result of a drunk driving conviction would be automatically discharged. Although there was no indication that the claimant was ever informed of this policy, the Supreme Judicial Court of Maine, utilizing the same standard of decision as our supreme court in *Hardin, id.* at 1034, held that "[c]onsidering the totality of the circumstances, the [claimant's] decision to risk the loss of his license to operate a motor vehicle, an essential requirement of his job, is conduct that objectively constitutes an intentional and substantial disregard of the employer's reasonable interests." *Id.* at 1036 (citation omitted).

*See In re Chillis*, 233 A.D.2d 740, 650 N.Y.S.2d 1016 (1996) (holding that there was disqualifying misconduct when the employer's routine motor vehicle check revealed that the claimant's driver's license was suspended for failure to maintain automobile insurance); *Williams v. Unemployment Compensation Bd. of Review*, 651 A.2d 708 (Pa.Commw.Ct.1994) (agency finding of "willful misconduct connected with ... work[,]" *id.* at 711, upheld where the claimant's driver's license was suspended for failure to pay fines incurred while driving his personal vehicle). *See also Dept. of Industrial Relations v. Rich*, 42 Ala.App. 80, 152 So.2d 692 (1963); *Rasmussen v. So. Dakota Dept. of Labor*, 510 N.W.2d 655 (S.D.1993); *Grimble v. Brown*, 247 La. 376, 171 So.2d 653 (1965); *Markel v. City of Circle Pines*, 479 N.W.2d 382 (Minn.1992); *Cook v. Iowa Dept. of Job Service*, 299 N.W.2d 698 (Iowa 1980); *EVAC Ambulance v. Unemployment Appeals Comm'n*, 509 So.2d 382 (Fla.Dist.Ct.App. 1987).

We are aware of several cases in which a claimant's loss of driving privileges required for employment was held not to be misconduct disqualifying him from unemployment insurance benefits.

In *Peterson v. Vogt*, 495 N.W.2d 875 (Minn.Ct.App.1993), for example, the claimant's receipt of seven off-duty speeding tickets over the course of two years resulted in the suspension of his driver's license. Because a valid driver's license was a requirement of his job, the claimant was discharged. *Id.* at 876–77. The Minnesota Court of Appeals held that there was no misconduct disqualifying the claimant from unemployment insurance benefits. *Id.* at 879.

In *Peterson*, however, the claimant could have continued to work if his employer had signed a statement enabling the Department of Public Safety to issue him a limited work license, *id.* at 877, and it was the employer's refusal to sign that the court of appeals expressly cited in holding for the claimant. *Id.* at 879. In contrast to the reasonable accommodation of the employer in our case, FOF 15, the employer in *Peterson* "did not

make even a minimal attempt to accommodate [the claimant.]" *Id.*

In another case from the Minnesota Court of Appeals, *Walseth v. L.B. Hartz Wholesale,* 399 N.W.2d 207 (Minn.Ct.App.1987), it was held that the claimant's off-duty careless driving conviction did not constitute disqualifying misconduct. *Id.* at 209–10.

We observe, however, that in *Walseth* the claimant was discharged because the employer's insurance company would not continue to insure him in light of his careless driving conviction. The employer was otherwise amenable to continuing employment. *Id.* at 208. This aspect of the case was dispositive for the court of appeals, as it noted that a case in which a claimant was discharged as a direct result of a license revocation or a drunk driving conviction might be decided the other way. *Id.* at 209–10. *See also Wright's Furniture Mill, Inc. v. Industrial Comm'n of Utah,* 707 P.2d 113 (Utah 1985) (loss of insurability due to two speeding convictions and one drunk driving citation, all off-duty, did not disqualify claimant from unemployment insurance benefits; but note the infractions occurred more than eight months before discharge and the drunk driving charge was dismissed).

In concluding that the appeals officer's denial of unemployment insurance benefits to Claimant should be upheld, we reiterate the deference due "the administrative agency's expertise and experience in its particular field ... [if] the agency's decision [is] consistent with the legislative purpose." *Camara,* 67 Haw. at 216, 685 P.2d at 797.

With respect to the legislative purpose, Claimant cites the general principle that the "Hawai'i Unemployment Security Law should be liberally construed in order to achieve the beneficent legislative purpose of relief of workers under the stress of unemployment through no fault of their own." *Berkoff v. Hasegawa,* 55 Haw. 22, 27, 514 P.2d 575, 579 (1973)(internal quotation marks and citation omitted). We agree; however, based upon the foregoing discussion, Claimant cannot be said to be without fault.

## CONCLUSION

In light of our discussion, and in light of the fact that this is a secondary appeal, in which we step into the shoes of the circuit court and review *de novo* the agency's decision, *Keanini,* 84 Hawai'i at 410, 935 P.2d at 125, the Director's first point on appeal—that the circuit court utilized the wrong standard of review—is moot.

Based upon our discussion, we conclude that the appeals officer was not clearly erroneous in his decision; indeed, in our view he was correct. We therefore vacate the November 12, 1998 judgment of the circuit court and remand for entry of judgment in favor of employer and the Director.