**BRM CONSTRUCTION, INC., a Colorado corporation, Plaintiff–Appellee,**

v.

**MARAIS GAYLORD, L.L.C., a Colorado limited liability company, Defendant–Appellant.**

No. 06CA0559.

Colorado Court of Appeals, Div. I.

June 28, 2007.

Certiorari Denied April 21, 2008.

Sherman & Howard, L.L.C., Charlotte Wiessner, Bret R. Gunnell, Denver, Colorado, for Plaintiff–Appellee.

Appel & Lucas, P.C., Garry R. Appel, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge J. JONES.

Defendant, Marais Gaylord, LLC (Marais), appeals the district court's order confirming an arbitration award in favor of plaintiff, BRM Construction, Inc. (BRM). We affirm.

## I. Background

Marais and BRM entered into a contract pursuant to which BRM agreed to serve as the general contractor for construction of a residential condominium project on land owned by Marais. Toward the end of the project, both parties claimed that the other owed them money under the contract.

On June 8, 2004, BRM filed suit against Marais to foreclose a mechanic's lien on the property and asserting claims for breach of contract and promissory estoppel. Simultaneously, BRM filed an ex parte motion to stay the action pending arbitration of BRM's claim for payment, as required by the contract. The district court granted that motion. Marais filed a motion to vacate the stay, contending that BRM had failed to comply with two conditions precedent to arbitration: specifically, that a claim must first be submitted to the project architect for resolution and also must be submitted within twenty-one days of the occurrence giving rise to the claim. The court issued an order staying the action pending arbitration, effectively denying Marais' motion.

Marais moved for clarification of the court's stay order. The court entered another order stating that submission of the claim to the architect was not a condition precedent to arbitration because the claim arose after the date of final payment set forth in the contract, March 15, 2004.

The case proceeded to arbitration. The arbitrator ordered BRM to submit its claims to the architect, and BRM did so. The architect, however, did not render a decision on BRM's claims. The arbitrator awarded BRM $423,577.63, of which $18,514.17 was to be paid from escrow directly to a subcontractor.

BRM filed an application with the district court to confirm the arbitration award pursuant to § 13–22–222, C.R.S.2006, the successor provision to former § 13–22–213, Colo. Sess. Laws 1975, ch. 154 at 576, which was in effect when the parties entered into the contract, and therefore applicable to this case. See §§ 13–22–203, 13–22–230, C.R.S.2006; Colo. Sess. Laws 2004, ch. 363, § 5 at 1732. Marais opposed the motion and moved to vacate the award, again contending that BRM had failed to comply with conditions precedent to arbitration. Marais argued that such failure constituted grounds to vacate the award under § 13–22–223, C.R.S.2006, the successor provision to former § 13–22–214, Colo. Sess. Laws 1975, ch. 154 at 576, because the arbitrator had exceeded his powers, see Colo. Sess. Laws 1975, ch. 154, § 13–22–214(1)(a)(III) at 576, and there was no agreement to arbitrate the dispute, see Colo. Sess. Laws 1975, ch. 154, § 13–22–214(1)(a)(V) at 576.

On December 15, 2005, the district court entered an order confirming the arbitration award and entering judgment in BRM's favor on its breach of contract claim. The court dismissed BRM's promissory estoppel claim as moot, and vacated the stay, thus permitting BRM to prosecute its mechanic's lien claim. BRM filed an amended complaint to foreclose its mechanic's lien. The court subsequently entered an order certifying its order confirming the arbitration award as final pursuant to C.R.C.P. 54(b).

Marais timely appeals the district court's order confirming the arbitration award.

## II. Discussion

Marais contends that the arbitration award should be vacated because of BRM's alleged failure to comply with conditions precedent to arbitration. We conclude, however, that the issue whether BRM failed to comply with procedural conditions precedent to arbitration was for the arbitrator to decide, and that an arbitrator's resolution of that issue, even

if erroneous, is not a ground for vacating or refusing to confirm the award.

■ The General Assembly enacted the Colorado Uniform Arbitration Act in 1975. "The purpose of the Act was to provide a uniform statutory framework for arbitration and to encourage settlement of disputes through the arbitration process." *Sopko v. Clear Channel Satellite Servs., Inc.*, 151 P.3d 663, 666 (Colo.App.2006); *accord Lane v. Urgitus*, 145 P.3d 672, 678 (Colo.2006).

■ If a party challenges whether a particular dispute must be arbitrated, the court must resolve one to three questions (depending on the answers to the first two, and assuming that all issues regarding arbitrability, including contract formation, have not been entrusted by the agreement to the arbitrator. *See Galbraith v. Clark*, 122 P.3d 1061, 1064 (Colo.App.2005)). First, does the agreement contain a valid and binding arbitration clause? Second, if so, who decides whether a particular dispute falls within the scope of the arbitration clause, the court or the arbitrator? Third, if the court is to decide whether a particular dispute falls within the scope of the arbitration clause, does the dispute fall within the scope of the arbitration clause? *City & County of Denver v. Dist. Court*, 939 P.2d 1353, 1363 (Colo. 1997); *see also Eychner v. Van Vleet*, 870 P.2d 486, 489 (Colo.App.1993).

The first question entails determining, to the extent such matters are disputed, (1) whether the contract in question contains a provision requiring arbitration of disputes, and (2) whether that clause is valid. *See, e.g., City & County of Denver, supra*, 939 P.2d at 1365 (addressing validity of clause giving party's representative power to decide the claim); *Lambdin v. Dist. Court*, 903 P.2d 1126, 1129–30 (Colo.1995) (holding arbitration agreement that conflicted with Wage Claim Act void); *Shotkoski v. Denver Inv. Group Inc.*, 134 P.3d 513, 515–17 (Colo.App.2006) (addressing whether illegal provision in contract rendered entire contract, and therefore arbitration clause contained therein, unenforceable); *R.P.T. of Aspen, Inc. v. Innovative Communications, Inc.*, 917 P.2d 340, 342–43 (Colo.App.1996) (decision whether contract violated antitrust laws, and was

therefore void, was necessary before arbitration award could be confirmed). The court's inquiry as to the validity of the arbitration clause is "limited to specific challenges to '*the agreement to arbitrate*,' not the broader contract containing the arbitration provision." *Ingold v. AIMCO/Bluffs, L.L.C. Apartments*, 159 P.3d 116, 120 (Colo.2007) (quoting in part former § 13–22–204(1)) (emphasis in *Ingold*). The arbitrator must decide challenges to the enforceability of the contract as a whole. *Ingold, supra*, 159 P.3d at 120.

The parties here agree that the contract contains a provision requiring arbitration of disputes, and that the provision is valid.

As to the second question—whether the court or the arbitrator decides if a dispute falls within the scope of the arbitration clause—Marais contends, relying on *City & County of Denver, supra*, that the contract is silent and therefore that the court must decide it. We disagree.

In *City & County of Denver*, the court held that where "the agreement is silent or ambiguous on [the question of who is to decide whether a dispute falls within the scope of the arbitration clause], then the determination should be made by the court, not the [arbitrator]...." *City & County of Denver, supra*, 939 P.2d at 1363. Here, the contract is not silent or ambiguous—it plainly gives the arbitrator the authority to decide questions of arbitrability.

The contract provides that "any controversy or Claim arising out of the Contract, or the breach thereof, shall be settled by binding arbitration...." It defines "claim" broadly as a "demand or assertion by one of the parties seeking adjustment or *interpretation of Contract terms*, payment of money, extension of time or other relief with respect to the terms of the Contract ... [and] other disputes and matters in question between [Marais] and [BRM] arising out of or relating to the Contract." (Emphasis added.)

■ Whether a particular dispute falls within the scope of the arbitration provision clearly requires interpretation of contract terms, as does the resolution of Marais' assertion that BRM failed to satisfy contractual

conditions precedent to arbitration. Because the contract entrusts questions of contract interpretation to the arbitrator, he was empowered to decide whether the dispute falls within the scope of the arbitration clause. *See Galbraith, supra,* 122 P.3d at 1064 (arbitrator empowered to determine arbitrability of claim where contract provided that arbitrator would decide "[a]ny dispute concerning this Agreement—the way it was formed, its applicability, meaning, enforceability, or any claim that all or part of this Agreement is void or voidable"); *cf. Sopko, supra,* 151 P.3d at 665 (agreement entrusted arbitrator with deciding whether thirty-day limit for rendering decision applied where arbitration agreement empowered arbitrator to decide "[a]ny dispute regarding this Agreement, including but not limited to its enforceability, scope or terms").

 In light of our answer to the second question, the third question is moot. However, even if we were to agree with Marais that the court should ordinarily decide whether the parties' dispute falls within the scope of the contract's arbitration clause, this inquiry does not encompass Marais' particular defenses to arbitration because the inquiry here is limited to whether the factual allegations underlying the claim for relief asserted fall within the scope of that clause. *See City & County of Denver, supra,* 939 P.2d at 1365–67; *Gergel v. High View Homes, LLC,* 996 P.2d 233, 235 (Colo.App.1999); *Eychner, supra,* 870 P.2d at 490. Only where a claim is clearly outside the scope of the arbitration provision should arbitration be denied by a court. Once it is decided that the subject of a particular dispute arguably falls within the scope of an arbitration provision, the court's inquiry ends, and the court must compel arbitration. *See Sopko, supra,* 151 P.3d at 666; *Cohen v. Quiat,* 749 P.2d 453, 455 (Colo. App.1987); *Cabs Inc. v. Delivery Drivers, Warehousemen & Helpers Local Union No. 435,* 39 Colo.App. 241, 244–45, 566 P.2d 1078, 1080–81 (1977).

In *Thomas v. Farmers Ins. Exchange,* 857 P.2d 532 (Colo.App.1993), a division of this court held that "an assertion that a demand for arbitration has not been made in a timely manner does not generally implicate an issue respecting the dispute's arbitrability. Rather, this question is generally looked upon as an affirmative defense, the resolution of which rests within the sole responsibility of the arbitrator." *Thomas, supra,* 857 P.2d at 534 (citing *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964)). We see no substantive difference in this context between a question regarding the timeliness of a demand for arbitration and questions concerning compliance with contractual claim submission procedures. All such questions raise procedural defenses to arbitration. None involves the factual underpinnings of the claim for relief.

Marais calls to our attention decisions from courts in Connecticut and New York holding that the court must determine whether certain conditions precedent to arbitration have been satisfied before ordering arbitration. *See White v. Kampner,* 229 Conn. 465, 641 A.2d 1381, 1385 (1994); *State Street Bridgeport, LP v. HRH/Atlas Constr., Inc.,* 2002 WL 377542 (Conn.Super.Ct. No. CV01388212S, Jan. 25, 2002) (unpublished); *Anagnostopoulos v. Union Turnpike Management Corp.,* 300 A.D.2d 393, 751 N.Y.S.2d 762, 763 (2002). We are not persuaded by these decisions.

In *White, supra,* the court based its decision on the fact that the arbitration provision at issue contained qualifying language limiting arbitration to claims "which [have] not been resolved under" the mandatory negotiation provision in the contract, thereby removing the question of arbitrability of claims that had not been submitted to that negotiation process from the purview of the arbitrator. *White, supra,* 641 A.2d at 1382–85. The arbitration provision here contains no such limitation.

In New York, an arbitrator decides whether there has been compliance with conditions precedent to arbitration if the arbitration provision at issue is broad. An exception is made if the condition precedent is the assertion of a claim within a contractual or statutory limitations period, *United Nations Dev. Corp. v. Norkin Plumbing Co., Inc.,* 45 N.Y.2d 358, 408 N.Y.S.2d 424, 380 N.E.2d 253, 255–56 (1978), and this exception is derived from state statutes that give courts the

authority to decide such an issue, N.Y. C.P.L.R. §§ 7502(b), 7503(b) (1998); *United Nations Dev. Corp., supra*, 408 N.Y.S.2d 424, 380 N.E.2d at 255–56. *See also Anagnostopoulos, supra*, 751 N.Y.S.2d at 763. Colorado has no statutory equivalent.

The majority of courts, including those in states that have adopted the Uniform Arbitration Act and those in states that have not, have held that issues concerning compliance with alleged conditions precedent to arbitration should be decided by the arbitrator. *See, e.g., SBC Interactive, Inc. v. Corporate Media Partners*, 714 A.2d 758, 761–62 (Del. 1998); *City of Morris v. Duininck Bros., Inc.*, 531 N.W.2d 208, 210 (Minn.Ct.App. 1995); *Commerce Bank, N.A. v. DiMaria Constr., Inc.*, 300 N.J.Super. 9, 692 A.2d 54, 57 (App.Div.1997); *Board of Library Trustees v. Ozanne Constr. Co., Inc.*, 100 Ohio App.3d 26, 651 N.E.2d 1356, 1358–60 (1995); *Ross Dev. Co. v. Advanced Bldg. Dev., Inc.*, 803 A.2d 194, 196–99 (Pa.Super.Ct.2002); *Valero Energy Corp. v. Teco Pipeline Co.*, 2 S.W.3d 576, 583–84 (Tex.App.1999). *But see Amalgamated Transit Union, Local 900 v. Suburban Bus Div.*, 262 Ill.App.3d 334, 199 Ill.Dec. 630, 634 N.E.2d 469, 473–74 (1994). "The essential rationale for this rule is that 'where the parties have clearly agreed to arbitrate the subject of the underlying dispute between them, ... it is unlikely that they intended other issues related to the dispute, such as the timeliness of the submission of the claim, to affect the "arbitrability" of the dispute.'" *Commerce Bank, supra*, 692 A.2d at 57 (quoting in part *PaineWebber Inc. v. Elahi*, 87 F.3d 589, 599 (1st Cir.1996)).

■ We agree with this rationale and hold that, under the former version of the Colorado Uniform Arbitration Act, issues concerning compliance with alleged conditions precedent to arbitration are to be decided by the arbitrator.

In reaching this conclusion, we note that the current version of the Colorado Uniform Arbitration Act provides that "[a]n arbitrator shall decide whether a condition precedent to arbitrability has been fulfilled...." Section 13–22–206(3), C.R.S.2006. Although the former version of the Colorado Uniform Arbitration Act applies in this case, the official

Committee note to § 6 of the Uniform Arbitration Act of 2000, from which the current § 13–22–206 is derived, states that this provision is "intended to incorporate the holdings of the vast majority of the state courts ... that ... issues of procedural arbitrability, *i.e.*, whether prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide."

Case law applying the former version of the Colorado Uniform Arbitration Act is consistent with the holdings in the vast majority of state courts to which the Committee note refers. For instance, as noted, the court's inquiry in this context is limited to an examination of the factual allegations underlying the claim for relief. *See, e.g., Gergel, supra*, 996 P.2d at 235. Alleged conditions precedent to arbitration are not part of that factual basis. Further, *Thomas, supra* (one of the cases cited in the Committee note), holds that a procedural objection to arbitrability must be decided by the arbitrator.

Marais urges us to address its condition precedent argument on the merits and vacate the award. However, we conclude that such review is beyond the proper scope of our review, given our holding that the arbitrator was authorized to decide questions concerning conditions precedent to arbitration.

Marais also sought to vacate the arbitration award on the grounds that it exceeded the arbitrator's powers and that there was no agreement to arbitrate. *See* Colo. Sess. Laws 1975, ch. 154, § 13–22–214(1)(a)(III), (V) at 576. An arbitrator exceeds his power, however, where he acts outside the scope of his contractual authority; an arbitrator does not do so by improperly applying the law or misinterpreting the contract. *Coors Brewing Co. v. Cabo*, 114 P.3d 60, 64 (Colo.App.2004). "An arbitrator is the final judge of both fact and law, and a court may not review the merits of an award without statutory grounds to vacate or modify." *BFN–Greeley, LLC v. Adair Group, Inc.*, 141 P.3d 937, 940 (Colo. App.2006); *see also Sopko, supra*, 151 P.3d at 666; *Coors Brewing Co., supra*, 114 P.3d at 64; *Container Technology Corp. v. J. Gadsden Pty., Ltd.*, 781 P.2d 119, 121 (Colo.

App.1989). Marais does not allege that the arbitrator exceeded his authority within the meaning of the statute.

As for whether there was an agreement to arbitrate, this issue concerns merely the first question entrusted to the court in determining arbitrability—whether a valid agreement to arbitrate, binding on the parties, exists. *See R.P.T. of Aspen, supra,* 917 P.2d at 342. As discussed above, the parties agree that there was an agreement to arbitrate. Hence, we may not examine the merits of the arbitrator's decision under the guise of deciding whether there exists a valid and binding agreement to arbitrate.

In sum, Marais did not demonstrate any grounds for vacating the arbitrator's award. Accordingly, the district court did not err in denying its motion to vacate the award, in granting BRM's motion to confirm the award, or in resolving those motions without a hearing. *See* Colo. Sess. Laws 1975, ch. 154, § 13–22–213 at 576; *BFN–Greeley, supra,* 141 P.3d at 941–42.

### III. Costs and Attorney Fees

BRM requests an award of its costs and attorney fees on appeal pursuant to C.A.R. 38(d), contending that Marais has failed to present a nonfrivolous argument. We disagree, however, and therefore deny BRM's request.

The order is affirmed.

Judge MÁRQUEZ and Judge TAUBMAN concur.