**Electronically Filed
Supreme Court
SCWC-22-0000374
04-JUN-2026
07:58 AM
Dkt. 35 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

_____

HYE JA CHOI,
Petitioner/Appellant-Appellant,

vs.

TACHIBANA ENTERPISES, LLC and
DEPARTMENT OF LABOR AND INDUSTRIAL RELATIONS,
Respondents/Appellees-Appellees.

_____

SCWC-22-0000374

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-22-0000374; CASE NO. 1CCV-20-0001364)

June 4, 2026

DEVENS, C.J., McKENNA, EDDINS, AND GINOZA, JJ., AND
CIRCUIT JUDGE HOLMA, ASSIGNED BY REASON OF VACANCY

OPINION OF THE COURT BY McKENNA, J.

## I.    Introduction

This secondary agency appeal arises out of the denial of
unemployment benefits based on alleged "misconduct."  As
explained below, we hold that none of the three incidents
alleged by the employer constituted misconduct as defined by

Hawaiʻi unemployment law, and that the employee is therefore entitled to unemployment benefits.

Hye Ja Choi ("Choi") was terminated from her employment as a part-time airport guide at the outset of the COVID-19 pandemic by her employer, Tachibana Enterprises, LLC ("Tachibana"). She applied for unemployment benefits. Tachibana asserted Choi was terminated due to three work-related incidents constituting misconduct that disqualified her from receiving unemployment benefits. A Department of Labor and Industrial Relations' Employment Security Appeals Referees' Office ("DLIR") appeals officer agreed with Tachibana and deemed Choi ineligible to receive unemployment benefits. The Circuit Court of the First Circuit ("circuit court")[1] and the Intermediate Court of Appeals ("ICA") affirmed. This certiorari proceeding follows.

Hawaiʻi's unemployment law, Hawaiʻi Revised Statutes ("HRS") Chapter 383, was "enacted for the beneficent and humane purpose of relieving the stress of economic insecurity due to unemployment." Camara v. Agsalud, 67 Haw. 212, 216-17, 685 P.2d 794, 797 (1984).

"Misconduct" that disqualifies an employee from receiving unemployment benefits is not "inefficiency, unsatisfactory conduct, poor performance because of inability or incapacity,

_____

[1] The Honorable James H. Ashford presided.

2

isolated instances of ordinary negligence or inadvertence, or good-faith errors in judgment or discretion," but instead are actions that "show a wilful or wanton disregard of the employer's interests, such as deliberate violations of or deliberate disregard of the standards of behavior which the employer has a right to expect of an employee, or carelessness, or negligence of such a degree or recurrence as to show wrongful intent or evil design."  Hawaiʻi Administrative Rules ("HAR") § 12-5-51(c) (eff. 1981).

We hold that, under the circumstances of this case, Tachibana failed to meet its burden of proving that any of the three incidents upon which Tachibana relied satisfied this definition and standard of misconduct.  Hence, Choi is entitled to unemployment benefits.  We therefore vacate the DLIR, circuit court, and ICA decisions; and we remand to the DLIR for further proceedings consistent with this opinion, including a determination of the amount of unemployment benefits to which Choi is entitled.

## II.  Background

### A.  Factual background

From September 19, 2016 through March 30, 2020, Choi was employed as a part-time airport tour guide by Tachibana, a tour operations company that caters to Japanese speaking tourists.

3

Choi primarily worked at the Honolulu airport, escorting Japanese speaking guests to various Waikīkī locations by bus.

At the time she was hired in 2016, Choi was issued and signed a 2012 employee handbook that contained an at-will employment clause. Around the end of 2019, Tachibana revised the handbook and issued a directive for all employees to review and electronically sign a form acknowledging the revised handbook, which also contained an at-will clause.

The stated deadline for employees to sign the acknowledgment was January 31, 2020. But the Tachibana tour guide assistant manager responsible for informing Japanese speaking tour guides (Choi is not proficient in English and speaks Japanese and Korean) did not notify the tour guides regarding the acknowledgment requirement until February 7, 2020 because she was "so busy at the time" and was unable to send the email to the guides by the January 31, 2020 deadline, "[s]o it was kind of late[.]"

This was all occurring during the onset of the COVID-19 pandemic. On March 4, 2020, then Governor Ige issued his first emergency proclamation in response to the pandemic. See For Our Rights v. Ige, 151 Hawaiʻi 1, 3, 507 P.3d 531, 533 (App. 2022)

4

(detailing the State of Hawaiʻi's COVID-19 response).[2]  The Hawaiʻi Legislature announced it was recessing on March 16, 2020.  S.C.R. 242, 30th Leg., Reg. Sess. (2020).  By this date, Choi was apparently the only Tachibana employee who had not signed the acknowledgement form.

Choi said she did not sign the acknowledgement form because she did not understand the at-will clause and wanted an explanation meeting with Tachibana (and apparently did not know an at-will provision was already in the handbook she had signed at the outset of her employment).  The introduction page of the handbook instructed employees to read the handbook "carefully" before signing the "acknowledgment form" and further directed that if they did not understand or had any questions "about any information" in the handbook, they were to ask their supervisor about it, which is exactly what Choi did.

At a March 16, 2020 meeting with Tachibana, Choi received what was titled a "Progressive Counseling and Corrective Action Notice" due to her "[r]efus[al] to submit Employee Handbook Acknowledgment, which was due on January 31, 2020, to her manager."  This was the first written warning Choi had received as a Tachibana employee under its progressive discipline policy.

_____

[2]     Although the government's response to the COVID-19 pandemic is not in the record on appeal, we take judicial notice of it.  See State v. Kwong, 149 Hawaiʻi 106, 117, 482 P.3d 1067, 1078 (2021) (holding appellate courts have discretion to take judicial notice in the interests of justice).

5

The warning said that to correct her action, Choi was "[r]equired to submit all mandatory documents, whether it's company or department required," by April 14, 2020. The written warning also said that her failure to comply by the April 14, 2020 deadline, or any future violations, "may result in further disciplinary action, up to and including termination." This was the first time Choi was told by Tachibana that her failure to sign the acknowledgment form could lead to termination.

Despite expressly telling Choi that she had until April 14, 2020 to sign the acknowledgment, Tachibana terminated Choi on March 30, 2020, approximately two weeks before Tachibana's corrective action deadline. The termination notice said Choi had been given both a verbal and first written warning. The termination notice further stated there had been "numerous complaints received on [Choi's] unprofessional conduct, and insubordination towards management." The notice included descriptions of February 17 and February 20, 2020 customer service incidents not mentioned in the March 16, 2020 written warning, which allegedly violated Tachibana's rules of conduct.

B. **DLIR proceedings**

After her termination from Tachibana's employment, Choi filed for unemployment benefits. On June 3, 2020, DLIR's Unemployment Insurance Division ("UID") initially granted Choi's request for unemployment benefits ("UID Decision").

6

Tachibana appealed the UID Decision, asserting Choi had been "involuntarily terminated for unprofessional conduct and insubordination."  In its letter of appeal, Tachibana claimed that Choi was the "only employee to not submit the acknowledgment in on time[,]" although Tachibana's internal emails showed that at least two other employees had not signed off on the handbook acknowledgment as of March 10, 2020. (Emphasis in original.)

On July 8, 2020, a telephonic hearing was held before a DLIR appeals officer.  Three Tachibana representatives appeared: a human resources manager, a director, and a tour guide assistant manager.  Choi was apparently sent a copy of the hearing notice, but did not attend the July 8th hearing.

At this hearing, Tachibana presented evidence about three incidents it contended constituted workplace misconduct by Choi: (1) her refusal to sign the acknowledgement form receiving the revised employee handbook; (2) an airport employee's complaint of Choi's unauthorized attempted use of a TSA gold lane for a family with a baby on February 17, 2020; and (3) a Japan Airlines complaint about Choi allegedly yelling at its staff on behalf of a Tachibana customer on February 20, 2020.[3]

---

[3]     Tachibana representatives also testified that Choi had several customer complaints dating back to 2018, but did not submit evidence on these prior incidents.

Although Tachibana briefly mentioned prior customer service complaints, it had made clear in the hearing that the first reason it had for termination was insubordination for Choi's refusal to sign the acknowledgment form.

On July 9, 2020, the appeals officer reversed the UID Decision, finding Choi was discharged for misconduct and therefore disqualified from receiving unemployment benefits. After Choi requested a reopening of the case, the appeals officer held a second telephonic hearing on August 24, 2020. Choi was provided a Japanese interpreter through a telephonic interpretation service. The same three Tachibana representatives were present.

Choi contested Tachibana's characterization of the three incidents. Because her testimony through the interpreter was difficult to understand, the appeals officer entered Choi's documents into the record, which Choi apparently agreed would serve as her rebuttal to Tachibana's evidence of discharge for misconduct.

On September 4, 2020, the appeals officer issued his "DECISION IN THE MATTER OF: 2004430 (REOPENING)" ("DLIR appeals officer's decision"), which reaffirmed his initial decision

8

reversing the UID Decision.  The appeals officer ruled that the three incidents led to Choi's discharge due to misconduct:

1. Insubordination: The hard copy Employee Handbook, initially issued in 2012 was revised and electronically posted on-line effective January 1, 2020.  Ex. 16.  In December 2019, employer issued a directive for all employees to review and electronically sign their acknowledgment that they had read the revised Employee Handbook.  The deadline to do this was January 31, 2020.  The only major change was converting the timekeeping process from manual to on-line.  There was no change to the employment provision (EP) that the employer was an "at will employer."  By mid-March 2020, [Choi] was the only employee who had not complied, alleging that she did not sign because she disagreed with parts of the handbook, particularly the EP, which she also claimed she did not understand.  As a result of her repeated non-compliance, [Choi] was issued a written warning for insubordination on March 16, 2020 and told to comply as soon as possible.

2. February 17, 2020 Customer Service Complaint: [Choi]'s supervisor received a complaint from an airport staff person that [Choi] had attempted to but was prevented by Airport TSA from having a regularly ticketed passenger with a baby go through the "Gold Lane" security checkpoint instead of the regular ticketed security checkpoint.  This was a violation of TSA airport security regulations which [Choi] should have been aware of based on her past training.  The airport staff person also reported that her interaction with [Choi] was unpleasant, and that this was not the first time that [Choi] had tried to improperly use the "Gold Lane."

3. February 20, 2020 Customer Service Complaint: While [Choi] was assisting her tour group in checking in for their flight with an important airline/business partner of the employer, someone in the tour group requested a seat change.  While the airline staff was making the change, [Choi] directed a loud false statement to the airline staff that the change process was taking too long and that the seat change requestor was complaining.  When the airport staff manager came out to apologize to the requestor, he/she reported that they were not complaining and understood the delay and that the airline staff was doing them a favor.  Airline staff management reported the incident to the employer to remind [Choi] about acting appropriately to maintain a good business partner relationship.

9

+The appeals officer further summarized Choi's testimony and her response to Tachibana's appeal:

> In her reopening request, Ex15, and at the reopened hearing, [Choi] explained that she did not sign the acknowledgment because she did not understand it; she was being forced to sign to acknowledge policies and procedures that were not in the handbook; she was subjecting herself to disciplinary action including termination at any time, without prior notice and without cause; she had never signed such an employment document; and she was afraid and felt under duress. Regarding the February 17, 2020 customer service complaint, [Choi] maintained that she did not do anything wrong. She alleged that TSA staff told her that they recently changed their "Gold Lane" rules. Regarding the February 20, 2020 customer service complaint, she again maintained she did not do anything wrong. Her clients/passengers had been waiting too long and [Choi] felt it was her responsibility to speak up on their behalf. Finally, [Choi] asserted that she was wrongfully terminated in retaliation for filing complaints about upper management's alleged wrongdoing.

Because Choi was an at-will employee, the appeals officer explained that the relevant determination was whether she was discharged for misconduct, not whether she was wrongfully terminated. Referring to misconduct factors outlined in HAR § 12-5-51, the appeals officer concluded:

> The prior training and warnings [Choi] received were an indication of [Tachibana]'s efforts to maintain her employment despite her continual unsatisfactory work performance and insubordinate conduct. The evidence shows that [Choi], instead of recognizing her performance and conduct shortcomings and trying to improve and comply as expected, disregarded these efforts as evidenced by her recurring customer/client service complaints and insubordinate refusal to electronically sign the Employee Handbook Acknowledgement for no valid reason. Although [Choi] has denied committing any deliberate wrongdoing associated with the two complaints, and it remains in dispute as to what actually happened, there is no dispute that [Choi]'s actions were construed to be so objectionable as to warrant filing a complaint with the employer. Such actions had an adverse and undermining effect on the employer's business operations. Therefore, it is concluded that [Choi]'s recurring customer service complaints and her continual deliberate disobedience to a reasonable employer directive to acknowledge the revised employee handbook were

10

attributed to a gross neglect of duty and a deliberate disregard of the standards of behavior an employer has a right to expect of an employee in [Choi]'s position. Accordingly, [Choi] was discharged for misconduct connected with work.

## C.   Appellate proceedings

### 1.   Circuit court proceedings

Choi appealed the DLIR appeals officer's decision, which after oral argument, was affirmed by the circuit court.[4]  In a May 11, 2022 written order, the circuit court concluded:

1.     There is no basis in the record or in the written or oral arguments to show any abuse of discretion by Appellee DLIR;
2.     There is adequate support in the record for all factual conclusions made by Employment Security Appeals Referees' Office's (ESARO) Appeals Officer, James Hom;
3.     There is no error by the ESARO Appeals Officer James Hom; and
4.     None of the provisions of HRS § 91-14(g) are present to justify reversal, modification, or remand of this case.

The circuit court entered its final judgment on the same day.

### 2.   ICA proceedings

Choi timely appealed to the ICA, raising arguments regarding (1) the evidence considered by the DLIR appeals officer and circuit court, and (2) the quality of the language interpretation services provided to her.  Choi also argued the circuit court and DLIR failed to provide written notices in her native language and a competent interpreter, which she contended

---

4     A transcript of the April 1, 2022 oral argument before the circuit court is not in the record.  From the circuit court's minutes, it appears a Korean-English interpreter interpreted for Choi.

11

was in direct violation of HRS § 321C-3 (Supp. 2012).[5]  Tachibana argued that the DLIR appeals officer's findings were not clearly erroneous and that Choi was provided with interpreter services as required by law.

The ICA agreed with Tachibana and rejected Choi's arguments.  Choi v. Tachibana Enters., LLC, No. CAAP-22-0000374, 2025 WL 1541655, at *3 (Haw. App. May 30, 2025) (SDO).  The ICA concluded the appeals officer did not clearly err in determining that Choi "was discharged for misconduct connected with work" due to a March 16, 2020 insubordination warning and two customer service complaints in February 2020 and was provided with an opportunity to present her arguments with interpreters present. Id.

---

[5]     HRS § 321C-3 states in relevant part:

> (a)  Each state agency and all covered entities shall take reasonable steps to ensure meaningful access to services, programs, and activities by limited English proficient persons, which will be determined by a totality of circumstances[.]
>
> . . . .
>
> (b)  Subject to subsection (a), each state agency and covered entity shall provide competent, timely oral language services to limited English proficient persons who seek to access services, programs, or activities.
>
> (c)  Subject to subsection (a), each state agency and covered entity shall provide written translations of vital documents to limited English proficient persons who seek to access services, programs, or activities[.]

12

### 3. Certiorari proceedings

In her certiorari application, Choi, continuing as a self-represented litigant with limited English proficiency,[6] raised the same arguments she raised below. Neither Tachibana nor the DLIR filed a response.

At oral argument, Choi was represented by counsel appointed through the Appellate Pro Bono Project.[7]

## III. Standard of Review

On secondary appeal, "[t]he standard of review is one in which this court must determine whether the circuit court was right or wrong in its decision, applying the standards set forth in HRS § 91-14(g) to the agency's decision[.]" Flores v. Bd. of Land & Nat. Res., 143 Hawai'i 114, 120, 424 P.3d 469, 475 (2018) (cleaned up).

---

[6] Choi apparently used Google translate to translate documents in the record from Japanese or Korean into English.

[7] At oral argument, Korean-English interpretation was provided to Choi pursuant to Hawai'i Judiciary Policy #12, which provides:

> The Hawai'i State Judiciary is committed to providing meaningful access to court processes and services to persons with limited English proficiency. In all case types, the Judiciary shall reasonably provide, free of charge, and in a timely manner, competent court interpreters for parties, witnesses and individuals with a substantial interest in a case. It shall also provide language assistance services at points of contact with the Judiciary, including over-the-counter and over-the-telephone encounters for all Judiciary-related business. The Judiciary shall notify the public of the Judiciary's language assistance commitment.

HRS § 91-14(g) (Supp. 2016) provides in relevant part:

> (g) Upon review of the record, the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
>
> > (1) In violation of constitutional or statutory provisions;
> > (2) In excess of the statutory authority or jurisdiction of the agency;
> > (3) Made upon unlawful procedure;
> > (4) Affected by other error of law;
> > (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
> > (6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

"Under HRS § 91-14(g), conclusions of law are reviewable under subsections (1), (2), and (4); questions regarding procedural defects under subsection (3); findings of fact under subsection (5); and an agency's exercise of discretion under subsection (6)." Paul's Elec. Serv., Inc. v. Befitel, 104 Hawaiʻi 412, 416, 91 P.3d 494, 498 (2004) (cleaned up).

### IV. Discussion

**A. "Misconduct" that disqualifies an employee from receiving unemployment benefits law**

Hawaiʻi's unemployment law was "enacted for the beneficent and humane purpose of relieving the stress of economic insecurity due to unemployment" and must therefore be liberally construed for the benefit of the public. Camara, 67 Haw. at 216-17, 685 P.2d at 797. The intent of the unemployment law is to pay benefits to those who become involuntarily unemployed

14

through no fault of their own.  Medeiros v. Dep't of Lab. &

Indus. Rels., 108 Hawai'i 258, 266, 118 P.3d 1201, 1209 (2005).

These underlying purposes were particularly salient during

the COVID-19 pandemic, which gave rise to an estimated forty

percent unemployment rate in March and April of 2020 in Hawai'i's

tourism industry.  See Department of Business, Economic

Development & Tourism, Hawaii's Labor Market Impact During

COVID-19 (Apr. 2021).[8]

But entitlement to unemployment benefits is not absolute.

The law disqualifies employees who were discharged or suspended

for misconduct.  HRS § 383-30(2) (2015) provides:

> An individual shall be disqualified for benefits:
>
> . . . .
>
> (2)  Discharge or suspension for misconduct . . . For any week beginning on and after October 1, 1989, in which the individual has been discharged for misconduct connected with work, and until the individual has, subsequent to the week in which the discharge occurred, been paid wages in covered employment equal to not less than five times the individual's weekly benefit amount as determined under section 383-22(b).

HAR § 12-5-51(c) defines what actions constitute the

misconduct that can disqualify an employee from receiving

unemployment benefits:

> (c)  Misconduct connected with work consists of actions which show a wilful or wanton disregard of the employer's interests, such as deliberate violations of or deliberate disregard of the standards of behavior which the employer has a right to expect of an employee, or carelessness, or negligence of such a degree or recurrence as to show

---

[8]  https://files.hawaii.gov/dbedt/economic/archive/reports/COVID-19%20Labor%20Market%20Impact.pdf [https://perma.cc/24PF-BWKT].

15

wrongful intent or evil design. Mere inefficiency, unsatisfactory conduct, poor performance because of inability or incapacity, isolated instances of ordinary negligence or inadvertence, or good-faith errors in judgment or discretion are not misconduct. The misconduct shall be related to the work of the individual or the individual's status as an employee.

HAR § 12-5-51(d) then lists the evidence the DLIR is to consider in determining whether misconduct exists:

(d) In determining whether an individual's act constituted "misconduct" the [DLIR] shall consider any relevant evidence presented which relates to:
(1) Employee's reasons for the act or omission, and efforts to avoid the act or failure to act;
(2) The relevant circumstances of the case and any causative effect therefrom upon the employee's actions;
(3) The nature and importance to the employer of the offended interest of the employer;
(4) Any lawful and reasonable company policy or custom;
(5) Employer's actions to curtail or prevent, if possible, the objectionable conduct; and
(6) The nature of the act or failure to act.

HAR § 12-5-51(e) provides specific examples of misconduct:

(e) Situations where misconduct may be found include, but are not limited to, the following where the evidence demonstrates:
(1) Unexcused absence or recurring unexcused tardiness; or
(2) Altercation at work; or
(3) Material false representations by the employee to the employer; or
(4) Employee's gross neglect of duty; or
(5) Employee's wilful disobedience of employer's directives or employee's insubordination; or
(6) Intentional conversion of employer's property by the employee; or
(7) Employee's unauthorized use of intoxicants on the job; or
(8) Employee's wilful and substantial abuse of the employer's equipment or property.

As can be seen, the law sets a relatively high bar to establish misconduct disqualifying an employee from receiving unemployment benefits — which effectuates HRS Chapter 383's

16

broad humanitarian purpose.  And the burden of proof is on the employer to show that the claimant was discharged for misconduct.  Medeiros, 108 Hawaiʻi at 262, 118 P.3d at 1205.

We now discuss some relevant case law.

In Camara, this court held that a gas company truck driver, who was terminated for crossing a solid line on the highway resulting in a traffic accident, was not disqualified from receiving unemployment benefits based on misconduct.  67 Haw. at 214, 685 P.2d at 796.  This court noted the employee felt he could safely pass and would have safely passed absent negligence by another vehicle.  67 Haw. at 218, 685 P.2d at 798.  In light of this evidence, this court held the driver's conduct was inconsistent with the DLIR appeals officer's conclusion the employee acted in wilful and wanton disregard of the employer's interest.  Id.

But in Hardin v. Akiba, 84 Hawaiʻi 305, 316, 933 P.2d 1339, 1350 (1997), we held "the wilful or wanton disregard of the employer's interests" requirement had been met.  There, an employee was discharged based on an unexcused absence after numerous counseling sessions and notice from her employer regarding her poor dependability.  Hardin, 84 Hawaiʻi at 318, 933 P.2d at 1352.  The employer had engaged the employee in its formal progressive disciplinary process, and the employee had

17

received numerous formal and informal counseling sessions on her absenteeism. Hardin, 84 Hawaiʻi at 308, 933 P.2d at 1342.

This court indicated that the employer's progressive discipline practices are to be considered in determining whether an employee acted in wilful or wanton disregard of the employer's interests. Hardin, 84 Hawaiʻi at 318, 933 P.2d at 1352. In that case, the final incident of absenteeism constituted misconduct justifying denial of unemployment benefits because of the surrounding circumstances and the employer's previous actions to curtail the objectional conduct. Id. The employee "knew or should have known that her job would be in jeopardy" and still made a conscious decision in face of this risk to have an unexcused absence, which demonstrated a wilful or wanton disregard of employer's interests. Id.

Similarly, in Keanini v. Akiba, 93 Hawaiʻi 75, 82, 996 P.2d 280, 287 (App. 2000), a bus driver was terminated after his driver's license was suspended, including for not having no-fault insurance coverage. The ICA concluded the employee "knew or should have known that his job would be in jeopardy if he chose to drive uninsured," and that he made a "conscious decision in the face of this risk" to do precisely that, which demonstrated a "wilful or wanton disregard" and constituted misconduct. Keanini, 93 Hawaiʻi at 82-83, 996 P.2d at 287-88 (cleaned up). Although the employer never explicitly told the

employee to maintain his license, the ICA ruled it "goes without saying" that an employee must maintain their license to be a truck driver, and that his conduct in driving without insurance and getting his license suspended was in wilful and wanton disregard of the employer's interest. Keanini, 93 Hawai'i at 83, 996 P.2d at 288.

In Medeiros, this court ruled that "the level of culpability required to show wilful or wanton disregard is not subjective intent, but conscious disregard of a known (or which should have been known) risk with respect to a result of the conduct." 108 Hawai'i at 268, 118 P.3d at 1211. There, an employee was terminated after placing her hands around her co-worker's neck. 108 Hawai'i at 271, 118 P.3d at 1214. This court concluded that the employee "knew or should have known that her job would be in jeopardy" if she violated her employer's zero tolerance policy regarding violence in the workplace. Id.

We now apply the law defining misconduct to the incidents alleged by Tachibana.

**B.    Tachibana did not meet its burden to prove that Choi was discharged for workplace misconduct**

Here, the DLIR appeals officer determined that Choi was terminated due to work related misconduct based on three incidents: (1) Choi's refusal to sign an acknowledgement of receiving a revised employee handbook; (2) an airport employee's

19

complaint of Choi's attempted unauthorized use of a TSA gold lane for a family with a baby; and (3) a Japan Airlines complaint about Choi yelling at its staff on behalf of a Tachibana customer.

For the reasons that follow, we hold that, under these circumstances, Tachibana did not meet its burden of establishing that any of the incidents satisfied the definition of misconduct under Hawaiʻi law governing unemployment benefits.

## 1.    **Failure to sign employee handbook acknowledgement**

As noted, Tachibana alleged that it directed all its employees to review and electronically sign by January 31, 2020 an acknowledgement that they had read the revised employee handbook.  However, the tour guide assistant manager testified at the second DLIR hearing that the initial email notification to the tour guides requesting their signed acknowledgment was sent on February 7, 2020, a week after the January 31, 2020 deadline had passed.[9]  The assistant manager was asked, "why was it sent out at that time after the date of January 31st?"  She explained that it was sent out "late" because she "was so busy at the time, so I couldn't, uh, uh, send the email to the guides, by, uh, January 31st.  So it was kind of late [.]"  In other words, Tachibana's claim that Choi "refused" to sign the

---

[9]    The email sent by the tour guide assistant manager requesting that Choi and the other tour guides sign the acknowledgment form was actually dated February 8, 2020.

acknowledgment by the stated deadline of January 31, 2020 was actually due to the tardy request sent to Choi after the deadline had already lapsed. Thus, Tachibana's March 16, 2020 written warning issued to Choi stating that she had "refused" to submit the handbook acknowledgment "which was due on January 31, 2020," misstated the uncontroverted factual record.

Choi also apparently did not sign the acknowledgement form because she did not know an at-will provision was already in the handbook she had signed at the outset of her employment and wanted to meet with Tachibana for an explanation of the provision. As stated, the handbook directed an employee who had questions about the handbook to "ask your supervisor/manager," which is the course of action Choi pursued.

At the March 16, 2020 meeting, Tachibana issued Choi a written warning, noting it was her first written warning, due to her "[r]efus[al] to submit Employee Handbook Acknowledgment, which was due on January 31, 2020, to her manager." As noted earlier, Tachibana did not send an email to the tour guides regarding the acknowledgment requirement until February 7, 2020, indicating that the deadline was actually flexible.

In line with our reasoning in Hardin, the employer's application of its disciplinary process to the discharged employee is evidence to be considered in determining whether an employee's act constituted misconduct. 84 Hawaiʻi at 318, 933

21

P.2d at 1352; see HAR § 12-5-51(d)(4)-(5) (noting the DLIR shall consider relevant evidence as it relates to the "[e]mployer's actions to curtail or prevent, if possible, the objectional conduct" and "lawful and reasonable company policy or custom").

Critically, here, the March 16, 2020 written warning, which was Choi's first, gave her until April 14, 2020, to submit her signature. The written warning also told her for the first time that her failure to sign, by April 14, 2020, "may result in further disciplinary action, up to and including termination." The DLIR appeals officer's finding that the written warning told Choi she must comply "as soon as possible" was therefore clearly erroneous. And despite giving Choi until April 14, 2020 to sign, Tachibana, without further warning, prematurely terminated Choi's employment on March 30, 2020.

As Tachibana terminated Choi's employment before the reasonable corrective deadline it had set, it failed to follow its own progressive discipline policy. Under these circumstances, Tachibana did not meet its burden of proving that Choi's failure to sign the acknowledgement form constituted misconduct.

Whether or not Choi's failure to sign the acknowledgement form by March 30, 2020 constituted "unsatisfactory conduct" or "good-faith errors in judgment or discretion," it clearly was not an action that "show[ed] a wilful or wanton disregard of the

22

employer's interests, such as deliberate violations of or deliberate disregard of the standards of behavior which the employer has a right to expect of an employee, or carelessness, or negligence of such a degree or recurrence as to show wrongful intent or evil design," as required by HAR § 12-5-51(c). Not when Tachibana had set an April 14, 2020 deadline and first notified Choi that she needed to sign the handbook acknowledgement after the initial January 31, 2020 deadline had expired.

### 2. February 17 and 20, 2020 customer service complaint incidents

Tachibana also argues that Choi was terminated for misconduct because she violated its standards prohibiting "[d]iscourtesy in any form or disrespect, rudeness or otherwise unprofessional behavior to customers or employees" based on the two complaints for incidents on February 17 and 20, 2020.

Tachibana also failed to meet its burden of establishing that the incidents constituted unemployment benefit-disqualifying misconduct. Neither incident displayed a "wilful or wanton disregard of the employer's interests." See § HAR 12-5-51(c).

On February 17, 2020, Choi attempted to allow a regularly-ticketed family with a baby through a TSA gold priority lane. On February 20, 2020, she apparently raised her voice at an

23

airline agent in an attempt to expedite seat changes for her Tachibana customers.  Neither constituted "a wilful or wanton disregard of the employer's interests."

Granted, repeated incidents of this nature could eventually lead to a finding of a "wilful or wanton disregard of the employer's interests," as Tachibana has a clear interest in maintaining good relationships with TSA and airline representatives.  But although Tachibana listed these incidents as reasons for Choi's termination in the March 30, 2020 termination notice, it did not mention them in the March 16, 2020 progressive discipline written warning.  The written warning said that any future violations after March 16, 2020 "may result in further disciplinary action, up to and including termination."  But Tachibana did not provide evidence of any violations after the written warning was issued.

We note that Keanini and Medeiros discussed above demonstrate that one act or omission of an employee can sometimes constitute misconduct as a "wilful and wanton disregard of an employer's interest."  See Keanini, 93 Hawaiʻi at 82, 996 P.2d at 287; Medeiros, 108 Hawaiʻi at 271, 118 P.3d at 1214.  Also, Hardin shows that a single incident that otherwise would not qualify as misconduct could lead to a misconduct determination based on repeated violations through a progressive discipline policy.  See 84 Hawaiʻi at 318, 933 P.2d at 1352.

24

Tachibana had such a progressive discipline policy. The DLIR appeals officer referred to nondescript customer service complaint incidents involving Choi mentioned by Tachibana during the hearings, which had apparently led to verbal warnings from Tachibana.

But no prior incidents had led to any written warnings from Tachibana. And Tachibana made it clear at the hearing that the first reason it had for termination was "insubordination" for her refusal to sign the acknowledgment form. Then, the March 16, 2020 warning was Choi's first written warning, and only mentioned Choi's failure to sign the acknowledgment form. It did not mention anything else.

We stress that the issue here is not whether Choi, an at-will employee, was wrongfully terminated. The issue is whether she was terminated for misconduct as defined by Hawaiʻi unemployment law. We hold that, under the facts and circumstances of this case, Tachibana failed to meet its burden of proving that any of the three incidents constituted such misconduct.

As Tachibana failed to prove that Choi was discharged for actions constituting misconduct and she is therefore entitled to unemployment benefits, we need not address her argument that the impending COVID-19 pandemic played a role in her discharge.

For the same reasons, we need not reach Choi's assertions regarding inadequate language access services. We note, however, that in civil cases, HRS Chapter 321C regarding language access and Judiciary Policy #12 animate rights inhering in Article I, Section 5 of the Hawaiʻi Constitution.[10]

## V. Conclusion

For the foregoing reasons, we reverse the ICA's July 8, 2025 judgment on appeal that affirmed the circuit court's May 11, 2022 order and final judgment, which affirmed the DLIR appeals officer's September 4, 2020 decision. We remand to the DLIR for further proceedings consistent with this opinion.

| | |
|---|---|
| Lance D. Collins<br>for petitioner<br>Hye Ja Choi | /s/ Vladimir P. Devens<br><br>/s/ Sabrina S. McKenna |
| Jessica M. Sneed-Wong<br>for respondent<br>Tachibana Enterprises, LLC | /s/ Todd W. Eddins<br><br>/s/ Lisa M. Ginoza |
| | /s/ Karin L. Holma |



---

[10] Article I, Section 5 provides:

> No person shall be deprived of life, liberty or property without due process of law, nor be denied the equal protection of the laws, nor be denied the enjoyment of the person's civil rights or be discriminated against in the exercise thereof because of race, religion, sex or ancestry.